IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | 1:13CR109-1 |
| JOSHUA ALEXANDER HOVIS | : | |

GOVERNMENT'S TRIAL BRIEF

The United States of America, by and through Ripley Rand, the United States Attorney for the Middle District of North Carolina, hereby files this trial brief for the Court's consideration, and states the following:

I. STATEMENT OF FACTS

On or about October 25, 2012, at approximately 2:00 p.m., officers Patrick Schmeltzer and Mike Colvin with the Salisbury Police Department stopped a white Buick the defendant was driving after observing him operating the vehicle despite the fact that the officers knew, based upon previous contacts with the defendant, that he did not have a valid driver's license. During that stop the defendant got out of the car, and almost immediately fled the scene on foot. A short chase ensued through a heavily wooded area, during which officers observed the defendant fall to the ground. The officers also saw the defendant pull at the front of his pants and throw something to the ground. The defendant was located within a few minutes at the Ashton Woods apartment complex, which was located just on the other side of the wooded area. The defendant was sitting in a chair, breathing heavily, and sticks and leaves were tangled in his hair. The defendant was taken into custody, and transported to the scene of the traffic stop.

Additional officers had arrived by this time, including a canine officer and his handler. Officer Schmeltzer, the canine handler and the canine retraced the flight path of the defendant to look for evidence. The canine was not presented with a "scent article" from the defendant, but instead was utilized in order to detect items that might otherwise go unnoticed by humans. The officers first discovered the baseball cap the defendant had been wearing when he fled the scene of the traffic stop. The baseball cap was located in a grassy area between the location of the vehicle and the wooded area. Almost immediately upon entering the wooded area, and at the same location where the defendant was observed to have fallen, a set of keys was discovered. Although the canine eventually located the keys (and attempted to pick them up by its mouth), Officer Schmeltzer saw the keys before the canine. The firearm and magazine were found a short distance away along the path of the defendant's flight. Once again, the canine led the officers to each of these items. Officer Schmeltzer photographed all of these items, and collected them as evidence. Upon returning to the scene of the traffic stop, the keys were inserted into the vehicle to verify that they worked.

The defendant was taken to the police department for booking after his arrest. During the booking process the defendant made a statement that he had thrown marijuana, not a firearm, during the flight from the officers. Despite the search for evidence, no marijuana was located along the flight path of the defendant.

ATF Special Agent Nick Hardee examined the firearm, and determined that it was not manufactured in North Carolina and therefore had traveled in, or otherwise affected interstate commerce.

The defendant has a prior conviction for attempted trafficking in opium. He was sentenced to a term of imprisonment of 17-21 months as a result of that conviction. The defendant has not received a pardon, nor has his right to possess a firearm been restored.

With respect to these events, the government expects to present the testimony of several law enforcement officers that participated in the investigation.

II. <u>LEGAL ISSUES</u>

*Chain of Custody*

The "chain of custody" rule is found in Federal Rule of Evidence 901, which requires that the admission of an exhibit must be preceded by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901. The United States will offer evidence, by way of the officers who seized it, and, if necessary, the experts who analyzed that evidence.

As this Court is well aware, the "'chain of custody' is not an iron-clad requirement, and the fact of a 'missing link' does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material respect." <u>United States v.</u>

Ricco, 52 F.3d 58, 61 (4th Cir. 1995)(internal citation omitted). The United States will provide witnesses to satisfy the requirements under Federal Rule of Evidence 901 as to the admission of the firearms and any other relevant evidence.

*Flight*

The government expects to introduce testimony that the defendant fled from the scene of the traffic stop. In order for a flight instruction to be appropriate, the evidence must establish all the supporting inferences that link the flight to consciousness of guilt for the crime charged. United States v. Obi, 239 F.3d 662, 665 (4th Cir.), cert. denied,534 U.S. 835, 122 S.Ct. 86, 151 L.Ed.2d 49 (2001). The evidence must establish that the defendant fled or attempted to flee, and the evidence must support "inferences that (1) the defendant's flight was the product of consciousness of guilt, and (2) his consciousness of guilt was in relation to the crime with which he was ultimately charged and on which the evidence is offered." Id. Here the evidence is expected to show that the defendant ran from officers once it became apparent that he would be subjected to a search of his person, or arrest, both of which were virtually certain to reveal the presence of the firearm. United States v. Robinson, 73 Fed.Appx. 662 (4th Cir. 2003)(holding that flight instruction was properly given where defendant turned and ran from officer upon being asked to stop and raise his arms) As such, the government expects to request that the Court include an instruction on flight in its charge to the jury.

4

*Inextricably Intertwined Evidence*

In its case in chief, the government intends to offer testimony describing the officers' prior knowledge that the defendant did not possess a valid driver's license as a result of their prior experience with the defendant.

The government submits that evidence concerning the fact that the officer's knew the defendant did not have a valid driver's license is so inextricably intertwined with the events giving rise to the instant indictment that such evidence is admissible without reference to Fed. R. Evid. 404(b). "[E]vidence of uncharged conduct is not considered other crimes evidence if it arose out of the same series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial." United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994) (internal brackets, ellipses, and quotation marks omitted). See also United States v. Loayza, 107 F.3d 257, 263-64 (4th Cir. 1997) (same). In this case, the stop of the defendant's vehicle as a result of the traffic offense, driving without a license, cannot be separated from the discovery of the firearm which gave rise to the indictment. The evidence of the reason for the traffic stop arises out of the same transaction as the charged offense and is necessary to complete the story of the events as they happened. See United States v. Ivy, 929 F.2d 147, 152 (5th Cir. 1991) ("Uncharged offenses committed during a kidnapping or as a motive for kidnapping are not extrinsic but integral parts of the offense.") (internal quotations and citation omitted). Without the

5

presentation of this evidence, it will be difficult for the members of the jury to understand why law enforcement officers suddenly decided to stop the vehicle the defendant was operating.

*The Defendant's Criminal History*

As of the time of this filing, the defendant has agreed, and signed a stipulation that prior to the date of the instant offense he had been convicted of a felony within the meaning of 18 U.S.C. § 922(g)(1). In the event that the defendant changes his mind and withdraws the stipulation before trial begins, the government anticipates offering into evidence a certified copy of any and all qualifying prior felony convictions.

This the 25th day of June, 2013.

Respectfully submitted,

RIPLEY RAND
UNITED STATES ATTORNEY

/S/TERRY M. MEINECKE
Assistant United States Attorney
NCSB #27586
United States Attorney's Office
Middle District of North Carolina
P.O. Box 1858
Winston Salem, NC  27101
Phone:  336/747-7510
E-mail: terry.Meinecke@usdoj.gov

6

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA       :
                               :
          v.                   :         1:13CR109-1
                               :
JOSHUA ALEXANDER HOVIS         :

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of June 2013, a true and correct copy of the foregoing was served via the CM/ECF filing system to counsel of record:

David B. Freedman, Esq.

                              /S/TERRY M. MEINECKE
                              Assistant United States Attorney
                              NCSB #27586
                              United States Attorney's Office
                              Middle District of North Carolina
                              P.O. Box 1858
                              Winston Salem, NC  27101
                              Phone:  336/747-7510
                              E-mail: terry.Meinecke@usdoj.gov